UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**WAYLON J. PICOTTE, SR.,**
        Petitioner,

v.                                     Case No. 13-C-0853

**BOB HUMPHREYS,**[1] **Warden,**
**Kettle Moraine Correctional Institution,**
        Respondent.

---

### DECISION AND ORDER

Waylon Picotte, Sr., has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Before me now is the respondent's motion to dismiss the petition on the ground that Picotte has procedurally defaulted his claims.

Picotte was convicted of sexually assaulting a woman, Jennifer. His appellate counsel filed a direct appeal in the Wisconsin Court of Appeals and raised two federal issues: (1) Picotte was deprived of due process when the state lost or destroyed a gas-station video recording that might have existed and might have contradicted testimony provided by some of the state's witnesses, and (2) Picotte received ineffective assistance from his trial counsel. The Wisconsin Court of Appeals rejected both of these claims on the merits and also rejected the state-law claims Picotte had raised in that court.

Picotte's appellate counsel filed a "no merit" petition for review with the Wisconsin Supreme Court. See Wis. Stat. § 809.32(4). Under this procedure, when counsel concludes that a petition for review would be frivolous but the defendant insists on seeking

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Bob Humphreys, the current Warden of Kettle Moraine Correctional Institution, has been substituted for Brian Foster, the former warden.

review, counsel files a truncated petition containing only a description of the case's factual and procedural history and an appendix containing the relevant portions of the record. Id.; Wis. Stat. § 809.62(2)(d) and (f). It is then up to the defendant to file a supplemental petition that, among other things, identifies the issues the defendant wishes the supreme court to review. Wis. Stat. §§ 809.32(4)(a) & 809.62(2)(a) and (e).

Picotte's appellate counsel complied with his obligations under the no-merit procedure. He filed a statement of the case as well as an appendix that was required to contain, among other things, the opinion rendered by the Wisconsin Court of Appeals. See Wis. Stat. §§ 809.32(4) & 809.62(2)(d)(f)1. Picotte then filed several letters in response to his counsel's no-merit petition; these letters were intended to serve as his supplemental petition under § 809.32(4)(a). See ECF Nos. 12-9, 12-10, 12-12. In the letters, Picotte claimed he was innocent and argued that the evidence introduced against him at trial was inconsistent and incredible. However, he did not identify any particular legal claim—either state or federal—that he wanted the supreme court to consider and did not cite any cases or other legal authorities. The supreme court denied the petition for review in a short order that stated:

> A petition for review pursuant to Wis. Stat. §§ 808.10 and (Rule) 809.32(4) and letters dated August 29, September 27, October 3 and October 15, 2012 having been filed on behalf of defendant-appellant-petitioner, Waylon J. Picotte, and considered by this court;
>
> IT IS ORDERED that the petition for review is denied, without costs.

ECF No. 12-11.

After the supreme court denied his petition for review, Picotte commenced the present action. He seeks to raise the two federal claims he raised in the Wisconsin Court

2

of Appeals: denial of due process based on the lost or destroyed video evidence and ineffective assistance of trial counsel. He also seeks to raise a third claim, which he labels "exculpatory evidence." In his description of this claim, Picotte identifies some of the evidence he believes casts doubt on whether he sexually assaulted Jennifer.

The respondent has moved to dismiss the petition on the ground that Picotte did not exhaust his three claims and therefore has procedurally defaulted them. To exhaust a federal claim, a petitioner must "fairly present" it to all levels of the state judiciary, including to the state's highest court in a petition for discretionary review. See O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Lockheart v. Hulick, 443 F.3d 927, 929 (7th Cir. 2006). To satisfy this requirement, the petitioner must present both the operative facts and the legal principles that control the claim to each state court. Bolton v. Akpore, 730 F.3d 685, 694–95 (7th Cir. 2013). If the petitioner does not fairly present his federal claim to all levels of the state judiciary, then he is said to have "procedurally defaulted" the claim, which means the claim cannot be considered on federal habeas review. See Richardson v. Lemke, 745 F.3d 258, 268 (7th Cir. 2014).

In the present case, it is clear that Picotte did not fairly present any federal claims to the Wisconsin Supreme Court in his supplemental petition for review. He did not say anything about his claim based on the loss or destruction of the video or his claim of ineffective assistance of trial counsel. To the extent his letters could be construed as describing the facts underlying his "exculpatory evidence" claim, the letters identify no federal law or otherwise indicate that, in describing those facts, Picotte was raising a federal claim. Therefore, Picotte has procedurally defaulted his claims.

One question that has occurred to me but which the parties have not raised is whether Picotte's counsel, through his no-merit petition for review, fairly presented to the supreme court the claims involving the loss or destruction of the video and ineffective assistance of trial counsel. As noted, those claims were adjudicated on the merits in the court of appeals, and counsel was required to include the decision of the court of appeals in the appendix to his no-merit petition for review. However, counsel did not (and was not required to) identify or raise any issues in the no-merit petition itself. Thus, only if the supreme court reviewed the appendix and the court of appeals's decision would it have been alerted to the existence of the federal claims involving the video and trial counsel's ineffectiveness. The United States Supreme Court has held that a federal claim is not fairly presented to a state's highest court if to discover the claim the court must look outside the petition for review to a decision of the state's intermediate appellate court. Baldwin v. Reese, 541 U.S. 27, 32 (2004); see also Lockheart, 443 F.3d at 929. In light of this holding, Picotte's counsel cannot be deemed to have fairly presented Picotte's claims to the supreme court by including the court of appeals's decision discussing those claims in his appendix to the no-merit petition for review.[2]

A petitioner who has procedurally defaulted a claim may have the default excused by showing either (1) both cause for, and prejudice from, the default, or (2) that failure to

---

[2] I note that if there were some indication that the justices of the supreme court, as part of their no-merit review, always read the lower-court decision in search of potential issues, then perhaps counsel's no-merit petition could be deemed to have fairly presented Picotte's federal issues to the supreme court. However, in Wisconsin, there is no indication that the justices of the supreme court routinely read lower-court opinions as part of their no-merit review. Rather, the statute governing the no-merit procedure expressly provides that it is up to the defendant to raise any issues he wishes to have reviewed. Wis. Stat. §§ 809.32(4)(a) & 809.62(2)(a) and (e).

consider the claim would result in a fundamental miscarriage of justice. See, e.g., Bolton, 730 F.3d at 696. Picotte seems to argue that he can establish both cause and prejudice and that a failure to consider his claims would result in a fundamental miscarriage of justice.

Picotte seems to claim that cause for the default exists because he was essentially proceeding pro se in the supreme court and was not aware of his responsibility to raise issues for review in response to his counsel's no-merit petition. See ECF No. 15 at ¶ 1. However, a person's pro se status is not cause for a procedural default when the default occurs during a stage of the case in which the person does not have a right to counsel. Smith v. McKee, 598 F.3d 374, 385 (7th Cir. 2010); Harris v. McAdory, 334 F.3d 665, 668 (7th Cir. 2003); Salberg v. United States, 969 F.2d 379, 383 (7th Cir. 1992). Picotte had no right to counsel in preparing his petition for review to the supreme court. See Ross v. Moffitt, 417 U.S. 600 (1974); Anderson v. Cowan, 227 F.3d 893, 901 (7th Cir. 2000). Thus, he cannot show cause for his default.

To have a default excused because of a fundamental miscarriage of justice, a petitioner must demonstrate actual innocence. See, e.g., Coleman v. Lemke, 739 F.3d 342, 349 (7th Cir. 2014). To demonstrate actual innocence, a petitioner must show that, in light of new evidence, it is more likely than not that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. Schlup v. Delo, 513 U.S. 298, 327 (1995).

Before I discuss Picotte's claim of actual innocence, I will provide an overview of the facts surrounding the sexual assault. These facts are drawn from the opinion of the court of appeals and the brief filed by Picotte's counsel in the court of appeals.

5

At trial, Jennifer testified that she ran into Picotte, whom she had known since childhood, at a bar. At about 2:00 a.m., a fight occurred outside the bar, and Jennifer told Picotte she wanted to leave because she had an outstanding warrant for unpaid child support. Picotte suggested they go to his aunt's house, which they did. Other friends joined Picotte and Jennifer at his aunt's house, but they left shortly after they arrived. As Jennifer was on her way out of the house, Picotte grabbed her by the back of the neck and forced her into a room. He pressed her against a window, pulled down her pants, and inserted his penis into her vagina. After about five seconds, he let her go.

Jennifer testified that she ran from Picotte's aunt's house and eventually made her way to a gas station, where she made calls to her friend, Sandra Cornelius, from a pay phone. Cornelius was at a party at an apartment on Pine Street. Jennifer testified that after she left the gas station, she went to Cornelius's apartment on Elm Street. Cornelius was not there, and Jennifer testified that she called Cornelius from the apartment. Jennifer then walked to Pine Street to meet Cornelius, but according to Jennifer's testimony she did not go into the apartment to attend the party. She testified that she remained at Pine Street for about an hour before a different friend picked her up and brought her to her stepsister's house. Later, Jennifer was prompted by her mother to report the sexual assault. She was examined by a nurse, who found no vaginal injury and no DNA from Picotte. However, the nurse identified broken blood vessels on Jennifer's neck, which would have been consistent with her claim that Picotte grabbed her by the neck during the assault. Picotte's aunt and his cousin were home at the time of the alleged assault, and they testified that they neither heard nor saw anything that would suggest a sexual assault had occurred.

Although Picotte does not precisely identify the "new" evidence that supports his claim of actual innocence, it appears that he is referring to evidence that came to light during a post-conviction hearing. This evidence consists of testimony by Joshua House, who was the host of the party on Pine Street, and Cathylee Villers, who was Cornelius's roommate at the time of the assault. House testified that, contrary to Jennifer's testimony, Jennifer did attend the party on Pine Street. Villers testified to facts suggesting that, contrary to Jennifer's testimony, Jennifer did not go to the apartment on Elm Street between the time she was at the gas station and the time she went to Pine Street. She also testified to other facts that were inconsistent with Jennifer's and Cornelius's testimony about Jennifer's whereabouts in the hours following the sexual assault.

Picotte's new evidence does not indicate that no reasonable juror would have found him guilty beyond a reasonable doubt had the juror been presented with such evidence. Although the evidence is to some extent inconsistent with Jennifer's and Cornelius's testimony about what Jennifer did in the hours following the assault, and although the evidence could have created reasonable doubt in the minds of some jurors, the evidence does not undermine the credibility of Jennifer and Cornelius to such a great extent that it is more likely than not that no reasonable juror would have found Picotte guilty had she or he heard the evidence. Accordingly, Picotte has not shown that a fundamental miscarriage of justice would occur if his procedural default were not set aside.

Before concluding, I note that Picotte also seems to contend that the lost or destroyed gas-station video constitutes "new" evidence that supports his claim of actual innocence. According to Picotte, this video might have shown what Jennifer was doing while she was at the gas station making calls to Cornelius on the gas station's pay phones.

7

However, because the video, if it ever existed,[3] was lost or destroyed and no witness testified about the contents of the video, no one knows what the video would have shown. Thus, the video, which no longer exists, is not evidence at all, and evidence that it might have existed at one time says nothing about Picotte's guilt or innocence. Accordingly, the video and the evidence indicating that it might have existed does not support Picotte's claim of actual innocence.

**CONCLUSION**

For the reasons stated, **IT IS ORDERED** that the respondent's motion to dismiss the petition for a writ of habeas corpus is **GRANTED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 16th day of June, 2014.

                                      s/ Lynn Adelman
                                      _____
                                      LYNN ADELMAN
                                      District Judge

---

[3] The state trial-court judge determined after a hearing that the police never obtained a video from the gas station. The court of appeals did not disturb this finding of fact.